## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BLUEFIELD DIVISION

**BENJAMIN ALLEN, III,**

       **Movant,**

**v.**                                   **Case No. 1:20-cv-00234**
                                             **Case No. 1:18-cr-00154-01**

**UNITED STATES OF AMERICA,**

       **Respondent.**

### PROPOSED FINDINGS AND RECOMMENDATIONS

Pending before the Court is Movant Benjamin Allen, III's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255.[1] (ECF No. 67). This matter is assigned to the Honorable David A. Faber, United States District Judge, and by Standing Order has been referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). On April 27, 2021, the undersigned held an evidentiary proceeding and thereafter allowed the parties additional time to brief any issues arising during the hearing. (ECF Nos. 106, 111, 114, 115). The parties have now completed their briefing, and the undersigned has reviewed all of the materials, including the transcript of the evidentiary hearing.

Accordingly, for the reasons set forth below, the undersigned respectfully **RECOMMENDS** that Allen's Motion to Vacate, Set Aside, or Correct Sentence

---

[1] The ECF numbers used herein are taken from Allen's underlying criminal action, *United States v. Allen,* Case No. 1:18-cr-00154-01.

pursuant to 28 U.S.C. § 2255 be **DENIED,** and this civil action be **DISMISSED, with prejudice,** and removed from the docket of the Court.

## I.    Factual and Procedural History

### A.    Guilty plea, conviction, and sentencing

Benjamin Allen, III, is an incarcerated person currently housed at Federal Correctional Institution Hazelton. On July 31, 2018, Allen was charged in a seven-count indictment with offenses related to the possession and distribution of hydrocodone and hydromorphone and possession of a firearm. (ECF No. 4). With the aid of his appointed counsel, Derrick Lefler, Allen negotiated a plea agreement with the Government wherein he agreed to plead guilty to one count—distribution of a quantity of hydromorphone in violation of 21 U.S.C. § 841(a)(1)—with a maximum potential term of imprisonment between 140 and 210 months. (ECF No. 55). In exchange, the government agreed not to file an information pursuant to 21 U.S.C. § 851 and agreed to drop the other pending charges. (*Id.* at 1–2). The agreement also required Allen to waive his right to appeal or file a motion under § 2255 if the sentence fell within the range agreed upon by the parties, except on the basis of ineffective assistance of counsel. (*Id.* at 5–6).

On December 17, 2018, a plea hearing was held. (ECF No. 53). At the plea hearing, Allen confirmed that he understood the plea agreement included a possible sentence of imprisonment between 140 and 210 months. (ECF No. 71 at 12–13). He also affirmed that he was responsible for the acts to which he pled guilty. (*Id.* at 19–20). Allen testified that no one had promised him "anything or offered any inducements," or "threatened … or exerted any force" upon him to get him to plead against his will. (*Id.* at 22–23). He also testified that he was completely satisfied with

2

Lefler's services and did not have any second thoughts about his decision to plead guilty. (*Id.* at 25). After a detailed discussion of the rights that Allen would relinquish by entering a guilty plea, he proceeded to plead guilty. The Court accepted his plea. (ECF No. 71 at 27).

Allen was sentenced on April 2, 2019. (ECF No. 59). At the sentencing hearing, the Court calculated Allen's sentence range under the United States Sentencing Guidelines (USSG). The Court found that Allen had a total offense level of 29, which included a career offender enhancement based on his prior convictions in state court for attempt to commit a felony, delivery of a controlled substance, and malicious wounding. (ECF No. 72 at 7). The Court determined that Allen's sentence range under the USSG included a term of imprisonment ranging between 151 to 188 months. (*Id.*). Lefler did not object to the calculation of the guidelines range, but noted that the plea agreement permitted the Court to vary downward to 140 months. (*Id.* at 8–9). Lefler argued for a sentence of 140 months' imprisonment, citing Allen's youth, the relatively minor nature of his prior offenses, his issues with substance abuse, the lapse of time between his offenses, and the significant increase in the offense level caused by the career offender enhancement. (*Id.* at 9–11). Despite Lefler's efforts, the Court refused to vary downward, noting Allen's "significant and lengthy criminal history," which included crimes of violence. (*Id.* at 11–12). Allen addressed the Court, offering an apology for his behavior and thanking Lefler for his hard work. (*Id.* at 12–13). Allen asked for leniency and expressed a need for vocational training and rehabilitation. (*Id.* at 13). In response, the Government asked for an upward variance based on Allen's conduct, a request which was also denied. (*Id.* at 13–14). The Court sentenced Allen to 188 months of imprisonment to be followed by a three-year term of supervised release.

(*Id.* at 14). The Court explained that it chose a sentence at the top of USSG range "to punish [Allen] for his serious offense behavior, to instill within [Allen] and the public a proper respect for the law, to provide for a proper period of incapacitation, and a suitable period of rehabilitation, and to hopefully deter similar conduct on the part of others." (*Id.* at 16). Although Allen was told by the Court that he had fourteen days within which to appeal, Allen did not appeal the judgment.

### B.    Motion under § 2255

On April 1, 2020, Allen filed the instant motion to vacate his judgment pursuant to 28 U.S.C. § 2255 ("§ 2255"). (ECF No. 67). Allen asserts three grounds for relief. First, in Ground One, he contends that Lefler was ineffective for failing to file an appeal even though Allen instructed Lefler to do so in a letter Allen sent on April 5, 2019. (*Id.* at 4). As to Ground Two, Allen asserts that Lefler was ineffective, because he should have known that the predicate offenses used to classify Allen as a career offender were "invalid" for that purpose and resulted in a longer sentence. (*Id.* at 5). In Ground Three, Allen posits that Lefler was ineffective and Allen's guilty plea was invalid, because it was "invalid to 'career' for 'attempt' crimes." (*Id.* at 7).

On October 7, 2020, Allen provided additional documents to the Court. (ECF No. 88). One document, labeled "MY COPY" near the top, is a handwritten letter dated April 8, 2019 (rather than April 5, 2019 as indicated by Allen in his § 2255 motion) and is addressed to Lefler. (ECF No. 88-1 at 2). In the letter, Allen accuses Lefler of tricking him into pleading guilty by telling him he would receive, at most, a twelve-year sentence. (*Id.*). Allen recounts a conversation he had with Lefler after the sentencing hearing in which they discussed the length of the sentence. (*Id.*). Allen claims that he was clear with Lefler that he wanted to appeal, and that his mother had witnessed the

4

exchange. (*Id.*). Allen advises that his mother and girlfriend have his power of attorney, and he has directed them to call Lefler to make sure a notice of appeal is filed. (*Id.*). Allen directs Lefler to file a notice of appeal and then excuse himself from the case, informing Lefler that "jailhouse lawyers" advised him to write a second copy of the letter "word for word" so that he would have his own copy, as that he did not trust Lefler. (*Id.* at 2–3).

On October 30, 2020, Respondent filed a response opposing Allen's § 2255 motion. (ECF No. 93). Therein, Respondent emphasizes the plea colloquy, noting that Allen was made aware of the possible sentence range he faced, and that Allen testified he was completely satisfied with Lefler's representation. (*Id.* at 2–3). Respondent argues that Lefler was not ineffective for failing to pursue an appeal of Allen's sentence as the Fourth Circuit lacked jurisdiction to hear such an appeal. (*Id.* at 9–12). Respondent also contends that evidence does not support Allen's claim that he instructed Lefler to file an appeal. (*Id.* at 13). Respondent notes that Allen's assertions and the factual allegations in affidavits submitted by his mother and girlfriend are belied by Allen's own testimony at his sentencing hearing. (*Id.* at 13–16).

Respondent reasons that because Allen testified that he understood the range of possible sentences and that he had not been promised anything to plead guilty, he would not have requested an appeal based on receiving a sentence greater than twelve years. (*Id.* at 16). Respondent next observes that although Allen maintains in his motion that he requested an appeal in a letter to counsel on April 5, 2019, the copy of the letter Allen provided is dated April 8, 2019. Moreover, records from the jail show that Allen sent no such letter in April 2019. (*Id.* at 17). Respondent suggests that this discrepancy is evidence that the letter was created well after the appeal period expired.

Respondent also points out that the affidavits submitted by Allen's mother and girlfriend do not specify when they contacted Lefler, and do not state that they did so within the time allowed for an appeal. Next, Respondent stresses that letters from Lefler prove that he advised Allen about possible sentences without promising the length of sentence he would receive and advised him about an appeal. Respondent contends that the letters corroborate that Lefler did not hear from Allen's family concerning an appeal until well after the deadline had passed. (*Id.* at 17–18).

Addressing Ground Two, Respondent argues that Lefler was not ineffective for failing to object to the application of the career offender enhancement based on Allen's prior "attempt" conviction, stating that the case Allen relies upon is not binding precedent in the Fourth Circuit. (*Id.* at 18–20). Therefore, Respondent contends, Allen cannot show that his counsel was deficient. Respondent further argues that Allen cannot demonstrate any prejudice arising from Lefler's failure to object to the career offender enhancement because, even without the conviction for attempt to commit a felony, Allen would still be considered a career offender. (*Id.* at 20–21).

As to Ground Three, Respondent counters that Lefler was not ineffective in his representation of Allen at the guilty plea stage as Allen's claim that the District Court failed to state all of the elements of the offense of conviction is without merit. (*Id.* at 21–22). Respondent also argues that Allen cannot show that Lefler was ineffective given that no reasonable counsel would have presented an argument about the elements of Allen's offense. (*Id.* at 22). Next, Respondent contends that Allen cannot show prejudice with regard to his guilty plea, pointing out that the plea agreement was "very beneficial" to Allen as it significantly reduced the risk of a much higher sentence. (*Id.* at 22–23). Respondent also argues that, pursuant to the plea agreement, Allen

waived his right to raise a claim not based on ineffective assistance of counsel in this collateral proceeding. (*Id.* at 23–24). Respondent asks that Allen's motion be denied or dismissed. (*Id.* at 25). On November 3, 2020, the undersigned entered an order allowing Allen 45 days to reply to Respondent. (ECF No. 95). Allen filed no reply.

On April 27, 2021, the undersigned conducted an evidentiary hearing wherein both parties, by counsel, presented witness testimony and other evidence regarding the events described in Allen's motion. (ECF No. 106). On July 6, 2021, Allen, through counsel, submitted a memorandum to supplement his original § 2255 motion. (ECF No. 114). In the memorandum, Allen only addresses Ground One of his motion and provides analysis of the evidence generated at the hearing as to Lefler's failure to file a direct appeal. (*Id.* at 4). He sets forth the undisputed factual background and argues that the evidence supports his claim. (*Id.* at 4–9). He again asks the Court to grant his motion. (*Id.* at 9).

On July 20, 2021, Respondent filed a response to Allen's supplemental memorandum. (ECF No. 115). Respondent maintains that Lefler was not ineffective and did not trick Allen into pleading guilty. (*Id.* at 3). Respondent describes Lefler as "forthright and truthful with regard to [Allen's] potential sentence, and states that the evidence clearly shows that [Allen] understood his plea agreement and its ramifications, and that in fact [Allen] was sentenced within a range he approved." (*Id.* at 4). Respondent also contradicts Allen's version of events, arguing instead that Lefler was not ineffective for failing to appeal because Allen never instructed Lefler to do so. (*Id.* at 10). Respondent characterizes the evidence provided by Allen's witnesses as vague and disputes that it provides "meaningful support for [Allen's] claims." (*Id.* at 10–14). Respondent also postulates that Lefler and the Government's other witnesses

rebutted Allen's claims at the hearing. (*Id.* at 15). Further, Respondent argues that the evidence is inconsistent with Allen's assertion that he told Lefler to appeal while seated in the courtroom following sentencing. (*Id.* at 15–17).

Respondent contends that Lefler was not ineffective for failing to consult with Allen concerning an appeal because "under the circumstances no rational defendant would seek to appeal—[Allen] had been well informed about his exposure, he had purposefully entered into a plea agreement with a specific range and an appeal waiver, and his sentence was well within that range," and Allen expressed no interest in appealing. (*Id.* at 19–20). Respondent also contends that even if Lefler had an obligation to consult with him, this obligation was met by a letter Lefler sent to Allen on April 3, 2019 in which Lefler discussed an appeal and advised that an appeal would likely be unsuccessful, but instructed Allen to contact him immediately if he wished to appeal. (*Id.* at 20; ECF No. 108-6).

### C.    Affidavits and testimony of Allen's family

In addition to the parties' briefs and supporting documents, the undersigned considered the affidavits and testimony of individuals Allen asserts witnessed conversations between him and Lefler and contacted Lefler on Allen's' behalf. Both witnesses testified at the evidentiary hearing on April 7, 2021.

#### 1.    *Estella Robinson*

Ms. Robinson is Allen's mother. In her affidavit, she claims that she heard Allen tell his attorney "to file his appeal right after the judge mentioned that he had 14 days to file it…on 4-2-19." (ECF No. 86). She also asserts that she spoke with Lefler outside of the courtroom and told him to file an appeal, and called his office and stopped by to check on the status of the appeal. (*Id.*). At the evidentiary hearing, Ms. Robinson

testified that she spoke with Lefler in the hallway after Allen was sentenced. (ECF No. 111 at 51). She recalled witnessing Allen speaking with Lefler from her seat in the courtroom, overhearing the two discussing "something about his appeal all this stuff like that and him not being a career criminal and some other stuff." (*Id.* at 52). Ms. Robinson testified that Lefler told her he was going to file an appeal. (*Id.*). She also asserted that she called Lefler a few days after sentencing to discuss an appeal but messages left with his secretary went unanswered. (*Id.* at 56–57).

> 2. *Gardenia Jones*

Gardenia Jones is the mother of Allen's child and was dating him at the time he was sentenced. In her affidavit, Ms. Jones claims she spoke with Allen within a week of his sentencing and Allen told her to contact Lefler to make sure he filed a notice of appeal. (ECF No. 87). She claims that she called Lefler's office several times and left messages with his secretary because Allen was unable to use the phone. (*Id.*). At the evidentiary hearing, she stated that she went to Lefler's office to sign papers after Allen was sentenced, but she did not discuss the appeal with Lefler at that time. (ECF No. 111 at 66). Ms. Jones was not able to provide a specific time for her first call to Lefler's office after Allen's sentencing, but thought it was two or three weeks after the sentencing. (*Id.* at 67–68).

> **D.      Affidavits and testimony of Respondent's witnesses**

The undersigned also considered affidavits and testimony from Respondent's witnesses supporting its opposition to Allen's motion.

> 1. *Derrick Lefler*

Lefler provided two affidavits in this matter. In the first, filed May 26, 2020, he maintains that he and Allen discussed his possible classification as a career offender

on a number of occasions, and after researching the topic, Lefler concluded that Allen's three prior felony convictions could serve as predicate offenses to designate him as a career offender. (ECF No. 73 at 1–2). Lefler acknowledges that he did not file an appeal in Allen's case, but sent a letter to Allen at the Southern Regional Jail shortly after sentencing, requesting that Allen advise him immediately if he wished to appeal. Lefler cautioned at that time that he could not "state with certainty" that Allen received the letter. (*Id.* at 3). Lefler notes that Allen "did not indicate a desire to pursue an appeal following the sentencing hearing." (*Id.*). Lefler denies receiving the April 5, 2019 letter Allen references in his motion, but remembers receiving calls from Ms. Robinson and Ms. Jones "several months after sentencing" asking about Allen's appeal. Lefler recalls informing them that no appeal was pending. (*Id.*). He then wrote Allen a letter on July 8, 2019, stating that he had not filed an appeal and explaining why. (*Id.*).

In his second affidavit, Lefler states "unequivocally" that he never promised Allen that he would receive a twelve-year sentence and stresses that he has "never promised a client in a criminal matter what the disposition of their case would be, absent a binding plea" as "such a statement or promise would be inaccurate." (ECF No. 91 at 1). Lefler remembers promising Allen that his sentence would be in the range established in the plea agreement, and notes that a letter he gave to Allen explains that the exact sentence he would receive would be determined by the Court. (*Id.* at 1–2). Lefler denies lying to Allen to induce his plea although Lefler did explain to Allen that a plea would give him the benefit of obtaining a reduction in his USSG range for acceptance of responsibility. (*Id.* at 2). Lefler disagrees with Allen's recollection that he was unhappy with the sentence when he received it; to the contrary, Lefler recalls being surprised that Allen did not appear upset with the sentence. Lefler firmly denies

10

agreeing to meet with Allen in the bullpen, or discussing an appeal with Allen's family after the hearing. He does not believe that he received communication from Allen's family concerning an appeal until several months after the sentencing. (*Id.* at 4). Lefler states that if he had any indication that Allen wished to pursue an appeal, he would have immediately sought a meeting with him, and if he had received the letter Allen claims he sent to Lefler, he would have moved to withdraw as counsel. (*Id.* at 4–5).

At the evidentiary hearing, Lefler testified that he gave Allen a letter before he signed the plea agreement, which detailed the possible sentencing range but reminded Allen that the final sentence would be in the sole discretion of the Court. (ECF No. 111 at 97–98). Lefler vehemently denied ever promising Allen that his sentence would be twelve years. (*Id.* at 99). He again denied Allen's contention that they discussed an appeal after Allen was given his sentence, recalling being surprised that Allen "took [the sentencing decision] as well as he did." (*Id.* at 102).

### 2.    *Miranda McPherson*

Miranda McPherson was employed as Lefler's legal secretary at the time Allen was sentenced. In her affidavit, Ms. McPherson states "with 100% certainty" that she did not receive the letter Allen claims to have sent to counsel's office. (ECF No. 92 at 1). She asserts that "the allegations and assertions communicated in that letter would have raised a red flag," prompting her to alert Lefler. (*Id.*). At the evidentiary hearing, Ms. McPherson testified that she did not hear from Allen's family during the month following his sentencing, only hearing that they had contacted the office in "June or July." (ECF No. 111 at 119).

### 3.    *Robyn Robertson*

Robyn Robertson is an office assistant at the Southern Regional Jail, where

Allen was housed during the eight days after his sentencing. She provided an affidavit to the Court detailing the results of her search of inmate mail records. (ECF No. 93-6). At the evidentiary hearing, she testified that in April 2019, she was responsible for overseeing the handling of inmate mail. (ECF No. 111 at 70). She explained how Respondent's exhibit containing a log of mail receipts at the jail show that Allen received mail from his counsel on April 8, 2019. (*Id.* at 72). While the "main log" of incoming mail did not bear Allen's signature, the receipts for the individual letters were signed by Allen in accord with the jail's policy for distributing mail. (*Id.* at 74, 77). Robertson also testified that jail records do not show that Allen sent any mail to his counsel after his sentencing on April 2, 2019 and before his transfer out of the jail on April 10, 2019. (*Id.* at 75).

### 4.    *Jaymi Martin*

Jaymi Martin is a correctional counselor at Southern Regional Jail. She provided an affidavit to the Court explaining that she delivered mail from the Court and from Allen's counsel on April 8, 2019. (ECF No. 93-7 at 2). At the evidentiary hearing, she explained the process for delivering inmate mail and noted that a lack of signature on the main log did not mean that Allen did not receive his mail. (ECF No. 111 at 80–83). Ms. Martin also stated that she had never signed a mail receipt on behalf of an inmate. (*Id.* at 84).

### 5.    *Fleesha Moran*

Fleesha Moran was one of Lefler's office staff at the time Allen was sentenced. At the evidentiary hearing, she testified that she does not recall receiving any communication from Allen's family after he was sentenced. (ECF No. 111 at 88–89). She testified that she keeps a record of every call to Lefler's office and, on reviewing her

notes from the relevant time period, did not find any indication that Allen's family had attempted to communicate with counsel in the two weeks after the sentencing. (*Id.* at 88-91).

## II.    <u>**Standard of Review**</u>

A motion made pursuant to 28 U.S.C. § 2255 is a collateral attack on a conviction or sentence imposed in a separate proceeding. *Wall v. Kholi,* 562 U.S. 545, 552-53 (2011). To succeed on such a motion, the movant must prove that the conviction or sentence was imposed in violation of the laws or Constitution of the United States; or the court imposing the sentence lacked jurisdiction; or the sentence exceeded the maximum authorized by law; or the sentence was otherwise subject to collateral attack. 28 U.S.C. § 2255. The burden of proof in a § 2255 proceeding rests with movants, who must establish their claims by a preponderance of the evidence. *Miller v. United States,* 261 F.2d 546, 547 (4th Cir. 1958).

As stated, Allen attacks his sentence on the ground that his Sixth Amendment right to the effective assistance of counsel was denied at the sentencing hearing when counsel failed to object to the application of a career offender sentence enhancement and at the appellate stage of the proceeding when counsel failed to file an appeal. (ECF No. 67). The Sixth Amendment to the United States Constitution guarantees every criminal defendant "the right to the effective assistance of counsel." *Strickland v. Washington,* 466 U.S. 668, 680 (1984). Under *Strickland,* a criminal defendant can prove ineffective assistance of counsel by meeting the requirements of a two-pronged test. *Id.* at 687. The defendant carries the burden of satisfying both prongs of the test, and "a failure of proof on either prong ends the matter." *United States v. Roane,* 378 F.3d 382, 404 (4th Cir. 1994).

First, the defendant must show that counsel's representation fell below an objective standard of reasonableness. *Strickland,* 466 U.S. at 687-88. When evaluating counsel's performance under the first prong of *Strickland,* "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. Thus, the "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance ... [and] that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (internal quotation marks omitted). The inquiry under *Strickland* is "whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Harrington v. Richter,* 562 U.S. 86, 88 (2011).

Second, the defendant must show that he was actually prejudiced by the ineffective assistance of counsel. *Strickland,* 466 U.S. at 687. To establish actual prejudice from counsel's deficient performance, "[p]etitioner must show that 'counsel made errors so serious that counsel was not functioning as the counsel guaranteed ... by the Sixth Amendment.'" *DeCastro v. Branker,* 642 F.3d 442, 450 (4th Cir. 2011) (citing *Harrington,* 131 S. Ct. at 787)); *see, also, Strickland,* 466 U.S. at 687 (holding that the second prong "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"). It is insufficient for the defendant "to show that the errors had some conceivable effect on the outcome of the proceeding," because "[v]irtually every act or omission of counsel would meet that test." *Strickland,* 466 U.S. at 693. Rather, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A

reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Precedents "establish that there exists a right to counsel during sentencing in both noncapital and capital cases. Even though sentencing does not concern the defendant's guilt or innocence, ineffective assistance of counsel during a sentencing hearing can result in *Strickland* prejudice because 'any amount of [additional] jail time has Sixth Amendment significance.'" *Lafler v. Cooper*, 566 U.S. 156, 165 (2012) (quoting *Glover v. United States,* 531 U.S. 198, 203 (2001)) (internal citations omitted). In order to establish deficient representation at sentencing, a movant must show that his counsel's performance was not objectively reasonable. In order to establish prejudice in the context of sentencing, a movant must at a minimum allege facts which demonstrate a "reasonable probability" that his sentence would have been more lenient absent counsel's errors. *See Buckner v. Polk*, 453 F.3d 195, 201–08 (4th Cir. 2006); *Royal v. Taylor,* 188 F.3d 239, 248–49 (4th Cir. 1999).

With respect to effective assistance of counsel on appeal, the United States Court of Appeals for the Fourth Circuit has long held that "a criminal defense attorney's failure to file a notice of appeal when requested by his client deprives the defendant of his Sixth Amendment right to the assistance of counsel, notwithstanding that the lost appeal may not have had a reasonable probability of success." *United States v. Peak*, 992 F.2d 39, 42 (4th Cir. 1993); *see also United States v. Witherspoon*, 231 F.3d 923, 926 (4th Cir. 2000); *United States v. Foster*, 68 F.3d 86, 88 (4th Cir. 1995) (The "failure to file a requested appeal is *per se* ineffective assistance of counsel, irrespective of the possibility of success on the merits."). This principle remains true even where a criminal defendant has accepted a plea agreement containing an appeal waiver

provision, or where there is a possibility that an appeal may result in the defendant receiving a higher sentence. *United States v. Glover*, 363 F. App'x 989, 990-91 (4th Cir. 2010); *United States v. Poindexter*, 492 F.3d 263, 271-73 (4th Cir. 2007) ("[A]n attorney is required to file a notice of appeal when unequivocally instructed to do so by his client, even if doing so would be contrary to the plea agreement and harmful to the client's interests."); *Monroe v. United States*, No. 3:10-cv-00866, 2011 WL 7021200, at *9 (S.D.W. Va. Nov. 4, 2011), *report and recommendation adopted by* 2012 WL 112552 (S.D.W. Va. Jan. 12, 2012). "Moreover, even if the defendant fails to clearly instruct counsel to note an appeal, counsel must still consult with the defendant about an appeal under certain circumstances." *United States v. Malone,* 442 Fed. Appx. 864, 866 (4th Cir. 2011) (citing *Roe v. Flores–Ortega,* 528 U.S. 470, 478 (2000)). As the Fourth Circuit explained in *Malone:*

> Specifically, counsel is required to consult with a defendant "when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." Consulting entails "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes."

*Id.* (quoting *Flores–Ortega,* 528 U.S. 470 at 478–80).

To establish prejudice, a defendant need only show a reasonable probability that, but for his counsel's failure to consult with him about an appeal or follow the defendant's directive, an appeal would have been filed. *Id.* If a defendant's counsel runs afoul of this rule, the proper procedure is for the district court to vacate its previous judgment, enter a new judgment from which the defendant may file an appeal, dismiss any remaining claims in the § 2255 motion without prejudice, and appoint counsel to assist the defendant on direct appeal. *United States v. Killian*, 22 Fed. Appx. 300, 301

(4th Cir. 2001); *Aldana v. United States*, No. 1:09cv461, 2010 WL 2860527, at *2 (W.D.N.C. July 19, 2010); *see also Peak*, 992 F.2d at 42 (instructing district court to vacate movant's judgment of conviction and enter new judgment from which appeal could be taken).

## III.    Discussion

Allen's three grounds in support of his § 2255 motion are addressed in turn below.

### A.    Ground One: Failure to Appeal

Allen asserts that he asked Lefler to file an appeal immediately after sentencing and reiterated that request in a letter sent to Lefler on either April 5 or April 8, 2019, well within the period allowed for the filing of such an appeal. (ECF No. 67 at 4). Allen also submitted a purportedly verbatim copy of the letter he claims to have sent to Lefler, in which Allen recounts that he asked Lefler to appeal during a conversation after sentencing, which his mother witnessed, and requests that Lefler file a notice of appeal and then withdraw as counsel. (ECF No. 88-1 at 2). In the letter, Allen also states that he had asked his mother and girlfriend to call Lefler's office to ensure that an appeal was filed. (*Id.*). In addition to the letter allegedly sent by Allen to Lefler, Allen offers his mother's testimony, claiming that she overheard Allen's conversation with Lefler immediately following his sentencing hearing. Lefler's mother recalls overhearing Lefler and Allen discussing Allen's desire to appeal, and further claims that she spoke with Lefler about filing an appeal shortly after the hearing. (ECF No. 111 at 51). Allen's girlfriend additionally claims that Allen wanted to appeal, stating that she contacted Lefler's office about the appeal at Allen's request, although she could not definitively state when that communication occurred. (ECF No. 87).

Lefler presents a starkly different version of events. Lefler disputes that he discussed filing an appeal with Allen immediately after sentencing, instead contending that he was surprised by Allen's lack of reaction upon receiving the lengthy sentence. (ECF No. 111 at 102). Lefler likewise denies having discussed an appeal with Allen's mother following the sentencing hearing. (ECF No. 91 at 4). He contends that the first indication he had that Allen was interested in an appeal occurred when Allen's mother and girlfriend contacted his office well after the period for appeal had expired, stating that he promptly sent Allen a letter explaining that no appeal was pending. (ECF No. 73 at 3). Lefler's letter was sent in July. He further insists that he did not receive the letter Allen supposedly sent on April 5 or April 8, 2019 from Southern Regional Jail. (ECF No. 91 at 4–5).

Resolving the factual dispute between the parties requires the Court to assess the credibility of the varying stories presented. "In assessing the credibility of witnesses, trial courts consider 'variations in demeanor and tone of voice.'" *Rahman v. United States*, 7:08-CR-126-D, 2013 WL 5222160, at *5 (E.D.N.C. Aug. 27, 2013) (quoting *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 575 (1985)). "In addition, '[d]ocuments or objective evidence may contradict the witness's story; or the story itself may be so internally inconsistent or implausible on its face that a reasonable factfinder would not credit it.'" *Id*. (citing *United States v. Marcavage*, 609 F.3d 264, 281 (3d Cir. 2010)). "Additional considerations can include the witness's motive to lie and the level of detail in the witness' statements." *Id*. (citing *United States v. Wilson*, 624 F.3d 640, 665 (4th Cir. 2010)).

Here, Allen's version of events is less credible than the version provided by Lefler for several reasons. First, Allen states that he wanted to appeal, because the

sentence he received was significantly longer than the twelve years promised to him by Lefler. However, the evidence simply does not corroborate Allen's assertion that Lefler "promised" a specific sentence. To the contrary, the evidence supports Lefler's testimony that he never assured Allen that a twelve-year sentence would be imposed, and that he told Allen his sentence could be as long as 210 months. The evidence corroborating Lefler's statements include: (1) the letter Lefler wrote to Allen on October 18, 2018, prior to the entry of a guilty plea, in which Lefler explained that Allen's USSG sentence range was 151 to 188 months, but the plea offer widened the range, allowing a sentence between 140 to 210 months, (ECF No. 108-2); (2) the plea agreement itself, which reiterated that Allen's sentence of imprisonment would fall somewhere between 140 to 210 months, if the plea agreement was accepted, and which made clear that the length of the sentence was entirely up to the Court, (ECF No. 55); (3) Allen's sworn statements at the plea hearing, substantiating that he understood the Court could not determine the USSG sentence range until the presentence report was prepared, that he understood the agreed sentence would fall somewhere between 140 to 210 months, that he understood the sentence could be more severe than he expected, and that no one had promised him anything other than what was written in the plea agreement, (ECF No. 71); (4) the Court's statements at the plea hearing, informing Allen several times that there was no guaranteed sentence and that the Court could vary upward from the USSG range in its sole discretion, (*Id*.); and Lefler's experience as a defense attorney. As Lefler indicated at the evidentiary hearing, he had practiced criminal defense law for approximately 30 years and knew never to promise a particular sentence to any federal criminal client. (ECF No. 111 at 99).

In contrast, Allen offers no evidence to support his claim of a guaranteed twelve-year sentence, except his own self-serving statements. If Lefler never promised Allen a specific sentence, then such a promise could not have provided a basis for Allen's instant desire to appeal. Moreover, if Allen truly was upset over his sentence at the time it was imposed, and no longer wanted Lefler to act as his attorney, it defies logic that Allen would not have immediately accepted the Court's offer to have the clerk forthwith prepare and file a notice of appeal on Allen's behalf. (ECF No. 72 at 19). The Court expressly advised Allen at the sentencing hearing:

> Mr. Allen, you have 14 days to appeal. If you wish to appeal, you must file within that period of time a notice of appeal with the clerk of the court. If you wish to appeal and cannot afford to hire counsel to represent you on appeal, the Court will appoint counsel for you. And if you so request, the clerk of court will prepare and file forthwith a notice of appeal on your behalf.

(*Id*.). Despite this offer from the Court, Allen did not request the clerk's help, or the appointment of appellate counsel.

Second, Respondent established through affidavits, testimony at the evidentiary hearing, and inmate mail records that Allen received Lefler's letter advising Allen about the timing of an appeal and requesting prompt direction if Allen wished to have an appeal filed. Records also show that Allen did not send the April 5 or April 8, 2019 letter which he purportedly copied word-for-word and provided to this Court. (ECF No. 93 at 17). Employees of the Southern Regional Jail confirmed that a letter from Lefler was delivered to Allen on April 8, 2019, and that no mail was sent from Allen to Lefler in April 2019. (ECF Nos. 93-6, 93-7, 111 at 67-84). This evidence is consistent with the affidavits and testimony of Lefler and his staff, all of whom testified with a remarkable degree of confidence that they did not receive a letter from Allen in

April 2019. (ECF Nos. 91 at 4–5, 92 at 1). Consequently, the evidence establishes that Lefler wrote to Allen and instructed him to quickly notify Lefler if Allen wanted to appeal, and Allen never notified Lefler to file an appeal within the fourteen-day appeal period.

Third, counsel has no reason to lie about his communications with Allen. He would have obtained no benefit by ignoring Allen's direction to file an appeal, as doing so would serve only as an invitation to be drawn into litigation about the discharge of his duties under the Sixth Amendment. If Lefler had received Allen's letter, he had no reason to ignore it; particularly, as Allen warned in the letter that he maintained a copy of it to refute any attempt by Lefler to deny receiving it. As Lefler explained, if he had received such a letter he would have moved to withdraw as Allen's counsel because the letter indicated that Allen no longer wanted Lefler to serve as his attorney. (ECF No. 91 at 4–5). While Allen testified that he did not have access to a copy machine at the jail, thus limiting his copy-making ability to handwritten transcription, he has not presented sufficient evidence that he actually sent the *original* of the copied letter to Lefler.

The degree of certainty of counsel's secretaries that they never received Allen's letter, or heard from his family by phone concerning an appeal within the relevant time, frame presents a formidable barrier to Allen's self-serving assertions. Fleesha Moran was responsible for answering most of the telephone calls at Lefler's office during the critical time frame and testified that her memory and the contemporaneous notes that she took indicate that neither Allen nor his family attempted to contact Lefler at his office within the two weeks after sentencing. (ECF No. 111 at 88–89, 91). Ms. McPherson, likewise, did not remember Allen's family contacting the office until "June

or July," well after the period for filing an appeal had elapsed. (*Id.* at 119). This testimony is not directly contradicted by the statements of Allen's witnesses, as they were unable to provide solid information about when they contacted Lefler to discuss an appeal. (ECF No. 115 at 10–14). Allen's narrative is further belied by Ms. Jones's own testimony at the evidentiary hearing in which she admits she did not discuss an appeal when she visited Lefler's office to sign paperwork following sentencing. (ECF No. 111 at 66). It strains credulity that Ms. Jones would neglect to broach the topic at an in-person meeting with Lefler; particularly, when she claimed in her affidavit that she had difficulty reaching him to discuss the appeal. (ECF No. 87).

Furthermore, the assertion of Allen's mother, Ms. Robinson, that she overheard Allen and his counsel discussing an appeal shortly after the sentencing hearing is insufficient to meet the evidentiary burden in this case. At the evidentiary hearing, Ms. Robinson seemed sincere and honest, but she had only vague memories of the conversation she claims to have overheard, remarking that she only heard "[a] little here and there," but could make out that it was "something about his appeal and all this stuff like that and him not being a career criminal and some other stuff." (ECF No. 111 at 52). This scenario seems especially implausible given its context. Allen, who claimed under oath to understand the appellate rights he forfeited by entering the guilty plea, had just received a sentence well within the range of his plea agreement. Ms. Robinson's murky recollection of the conversation does not outweigh Lefler's unequivocal testimony that Allen never asked him to file an appeal.

Put simply, the proof Allen presents in this matter does not provide enough support for his extraordinary claims. While it is uncontested that Allen's family members eventually contacted counsel's office to inquire about an appeal in Allen's

case, the evidence is insufficient for the undersigned to conclude that family members made such contacts within the time period prescribed for filing such an appeal. Allen has no persuasive evidence that he made his desire to appeal known to his attorney. The undersigned agrees with Respondent that, in these circumstances, any duty Lefler had to consult with Allen about an appeal was met by the letter Lefler sent to the Allen the day following his sentencing, which the unrefuted record shows that Allen received. *United States v. Witherspoon*, 231 F.3d 923, 926 (4th Cir. 2000) (citing *Roe v. Flores-Ortega*, 528 U.S. 470 (2000)). In sum, there is no proof that Allen asked counsel to appeal other than Allen's unsupported assertion that he did so, an assertion that is inconsistent with the rest of the record. Considering that Allen carries the burden of proof in this proceeding, the undersigned **FINDS** that he fails to establish by a preponderance of the evidence that he asked counsel to file an appeal, or that counsel should have further discussed the merits of an appeal with him. Accordingly, the undersigned **FINDS** that counsel was not ineffective for failing to appeal, or for failing to further consult Allen about filing an appeal.

### B.    Ground Two: Validity of Career Offender Enhancement

Allen claims that Lefler was ineffective by not arguing that Allen's past conviction for an "attempted" crime was not a valid predicate offense for a career offender enhancement, causing Allen to receive a longer sentence than he otherwise would have received. (ECF No. 67 at 5). Respondent argues that Lefler was not constitutionally deficient for failing to object to the application of the career offender enhancement, because such an objection was frivolous. Respondent asserts that Allen provides no binding precedent to support his claim, and in any event, his past

convictions formed a sufficient basis for the career offender enhancement. (ECF No. 93 at 18–21).

Respondent is correct. Counsel was not ineffective for declining to object to the career offender enhancement because settled law of the Fourth Circuit at the time established the validity of using a West Virginia conviction for attempt to commit a felony controlled substance offense as a predicate for applying the enhancement. *United States v. Dozier*, 848 F.3d 180, 188 (4th Cir. 2017) ("[T]he underlying offense that Dozier attempted to commit is a categorical match of a generic controlled substance offense."). The Fourth Circuit in *Dozier* provided a painstaking analysis of West Virginia's general attempt statute to determine if a prior conviction constitutes a controlled substance offense under USSG § 4B1.2. The analysis directly applies to Allen's 2011 conviction for attempt to commit delivery of hydromorphone in violation of West Virginia law. Because the "[f]ailure to raise a meritless argument can never amount to ineffective assistance," *Moore v. United States*, 934 F. Supp. 724, 731 (E.D. Va. 1996), counsel cannot be considered ineffective for declining to object to the enhancement. *See also United States v. Morris*, 917 F.3d 818, 823 (4th Cir. 2019).

In his first affidavit, Lefler recounts his efforts to avoid application of the career offender enhancement in Allen's case. (ECF No. 73 at 1–2). He notes that existing precedent at the time did not support the argument that an attempted drug trafficking crime was not a qualifying offense, and he ultimately concluded that the enhancement could apply to Allen. (*Id.*). As a "strategic choice[] made after thorough investigation of law and facts relevant to plausible options," counsel's decision not to object to the sentencing enhancement is "virtually unchallengeable." *Strickland v. Washington*, 466 U.S. 668, 690 (1984). By no means was such a decision objectively unreasonable

as required to satisfy the first prong of *Strickland*.

However, the Court need not wade too far into this territory because, as Respondent contends, (ECF No. 93 at 20), Allen cannot demonstrate prejudice resulting from counsel's failure and thus is unable to meet the second prong of *Strickland. See Rodriguez v. Bush*, 842 F.3d 343, 346 (4th Cir. 2016) (noting that courts need not evaluate deficiency of performance when the lack of prejudice is evident). Under USSG § 4B1.1, a defendant is a career offender if, *inter alia*, "the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." In the presentence report, the Probation Office listed three convictions that constituted predicate offenses, including Attempt to Commit a Felony by Delivering Hydromorphone, Delivery of a Controlled Substance (Cocaine), and Malicious Wounding. (ECF No. 63 at 13). At sentencing, the Court explicitly relied on all three convictions as predicate offenses. (ECF No. 72 at 7). Allen does not challenge utilization of the other two convictions—malicious wounding and delivery of cocaine—as either crimes of violence or controlled substance offenses. Thus, even if Allen's counsel had successfully objected to the use of Allen's past attempt conviction as a predicate offense for the purposes of a § 4B1.1 enhancement, the outcome would have been no different; in other words, it is not "reasonably likely" that a different result would have occurred. *Strickland* at 696; *Harrington v. Richter*, 562 U.S. 86, 112 (2011) (remarking that when evaluating prejudice under *Strickland*, "[t]he likelihood of a different result must be substantial, not just conceivable"). As Allen cannot demonstrate both prongs of the *Strickland* test, the undersigned **FINDS** that Allen is not entitled to relief on this ground.

## C.    Ground Three: Validity of Guilty Plea

In Ground Three, Allen posits that his counsel was ineffective and his guilty plea was invalid because it was "invalid to 'career' for 'attempt' crimes." (ECF No. 67 at 7). He argues that his Sixth Amendment right to counsel was violated by Lefler's failure to understand that Allen's prior attempt conviction could not support a career offender enhancement. Allen argues that Lefler's ignorance deprived Allen of effective assistance in his defense against an "element[] of the crime," rendering his guilty plea invalid. (*Id.*). Allen cites *Bousley v. United States*, 118 S. Ct. 1604 (1998), which stands for the proposition that a guilty plea is invalid when the defendant is not made aware of the elements of the offense. (*Id.*). Respondent counters that *Bousley* has no application here as there is no legitimate claim that the Court failed to properly state the elements of the offense of conviction. (ECF No. 93 at 21). Respondent also asserts that Allen does not allege any facts showing that his counsel's representation fell below the constitutional standard, maintaining that no reasonable counsel would have presented a challenge on the basis Allen describes. (*Id.* at 22). Respondent insists that Allen's claim should fail for lack of prejudice because there is no reason for the Court to find that Allen would have foregone the favorable plea agreement if counsel had taken a different approach. (*Id.* at 22–23).

As Respondent points out, Allen effectively waived his right to challenge his conviction in a collateral proceeding on any basis except ineffective assistance of counsel. (ECF No. 93 at 23). Accordingly, insofar as this ground attempts to challenge the validity of the guilty plea based on deficiencies of the Court, the Court cannot hear the claim. To the extent Allen challenges his counsel's effectiveness based on the alleged invalid nature of the guilty plea, his claim also fails on the merits.

The fallacy of Allen's argument is obvious in light of the above analysis of Ground Two. Counsel is never ineffective for declining to raise a meritless argument, and the argument Allen contemplates—that an element of his sentencing was not established by the government—is far from sound. Application of the career offender enhancement was proper in Allen's case because Allen had been convicted of three qualifying offenses. Lefler was not ineffective for choosing to accept the Court's use of the three convictions as predicate offenses; particularly, as he only did so after carefully reviewing the relevant legal standards.

Moreover, this ground must fail for lack of prejudice. (ECF No. 93 at 22). Just as in Ground Two, Allen cannot prevail on this claim as he makes no showing whatsoever that the outcome of his sentencing would have been different if the attempt conviction had not been considered by the Court in determining that Allen qualified as a career offender under USSG § 4B1.1. There is nothing to suggest that the stakes would have been any different for Allen in his decision to plead guilty; the sentencing range under the USSG would have remained exactly the same and Allen would have been exposed to greater penalty if he had chosen to eschew the guilty plea. Because the evidence presented falls woefully short of Allen's burden to prove his claim by a preponderance of the evidence, the undersigned **FINDS** that he is not entitled to relief on this ground.

## IV.   <u>Proposal and Recommendations</u>

For the reasons set forth above, the undersigned respectfully **PROPOSES** that the District Court accept and adopt the findings proposed herein and **RECOMMENDS** that Movant's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255, (ECF No. 67), be **DENIED,** and that this civil action be

**DISMISSED, with prejudice,** and removed from the docket of this Court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable David A. Faber, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties, Judge Faber, and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Movant and counsel of record.

**FILED**:  August 18, 2021

Cheryl A. Eifert
United States Magistrate Judge

28